JASPER E. JONES, Judge.
Plaintiffs, United Pentecostal Church International, Inc., and Robert G. Gilbert, R. J. Cross, D. J. Fulgium, Robert Sessums, Jr., Orville L. Ainsworth, Hugh M. Gilbert, Aubrey D. Sanderson, and Ricky Jones, individuals who allege themselves to be former members and/or members of the Board of Directors of the First Pentecostal Church of Vivian, Inc., appeal a judgment sustain *1295 ing an exception of lack of jurisdiction over the subject matter to the plaintiffs’ petition containing numerous demands against defendant Clarence Emery Sanderson, Pastor of the First Apostolic Church of Vivian, Inc., and the Board of Directors of said church. The demands contained in the petition seek to resolve numerous church-related disputes existing between plaintiffs and defendants. We affirm.
Plaintiffs allege the First Pentecostal Church of Vivian, Inc.’s name was changed by defendants to the First Apostolic Church of Vivian, Inc., (Apostolic), and that said churches are one and the same. Plaintiffs allege the First Pentecostal Church was affiliated with United (referred to in pleadings as the Central Church), and that its successor Apostolic, acting through defendants herein, has, contrary to the rules of United and Apostolic, disaffiliated itself with United.
Plaintiffs allege that the individual plaintiffs were deprived of their membership in Apostolic and that some of them were also terminated as members on the Board of Directors of Apostolic and improperly replaced, by actions taken by defendants without giving them proper notice, and otherwise in violation of the rules governing the church.
Plaintiffs allege that defendant, Sander-son, has been defrocked or declared to be no longer a minister of United and having lost his status as a minister of United is no longer qualified to be a minister of Apostolic.
Plaintiffs allege that defendants have discussed the sale of property belonging to Apostolic.
Plaintiffs pray for a judgment decreeing the action of Apostolic to disaffiliate with United to be null and void because it was taken contrary to the rules and regulations of United and Apostolic, and they further seek a declaratory judgment invalidating the removal of the individual plaintiffs from membership in the congregation and from the Board of Directors of Apostolic. Plaintiffs seek a preliminary and permanent injunction prohibiting defendants from selling or otherwise alienating or encumbering church property and from operating contrary to the by-laws of First United Pentecostal Church of Vivian, Inc. and the constitutional manual of United.
Plaintiffs further pray for a court order requiring defendants to hold an election of “church officers, ministers, board of directors, and officials” for Apostolic after giving notice to all members appearing on the membership rolls as of January, 1977.
The First Amendment to the U.S. Constitution provides:
“Congress shall make no laws respecting an establishment of religion, or prohibiting the free exercise thereof ...”[1]
A similar provision is contained in Art. 1, § 8 of the 1974 Louisiana Constitution which provides:
“No law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof.”
These constitutional provisions forbid governmental interference with religious freedom.
There is a vast body of jurisprudence emanating from the federal and state courts which holds that courts are prohibited by the First Amendment from attempting to resolve church disputes requiring interpretation of church laws and practices because this is interference with ecclesiastical and administrative matters within the church. See Serbian Eastern Orthodox Diocese, Etc. v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) and the numerous authorities cited therein. See also Katz v. Singerman, 241 La. 103, 127 So.2d 515 (1961); Henry v. Newman, 351 So.2d 1277 (La.App. 1st Cir. 1977); Macedonia Baptist Foundation v. Singleton, 379 So.2d 269 (La.App. 1st Cir. 1979); Joiner v. Weeks, 383 So.2d 101 (La.App. 3d Cir. 1980). It was the mandate of this rule that was the basis of the trial court’s judgment sustaining the exception to jurisdiction over the subject matter. This general rule is *1296 subject to the exception that courts may decide controversies relating to property disputes involving religious litigants wherein the disputes can be resolved without the courts becoming involved in controversies involving religious doctrine and practice. See Serbian and Macedonia, supra; Presbyterian Ch. v. Mary E. B. Hull Mem. Pres. Ch., 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969).
Plaintiffs assign as error the trial court’s sustaining the exception of lack of jurisdiction of the subject matter. Plaintiffs contend the trial court erred in refusing to take evidence of the relationship between United and Apostolic which plaintiffs contend would establish that the controversy alleged in their petition could have been resolved without doctrinal or ecclesiastical deliberations. Plaintiffs also contend there exists a property dispute between the litigants to which the First Amendment does not apply.
We view the issues created by plaintiffs’ broad assignments of error to be (1) was the trial court prohibited from inquiring into the controversy relating to the actions of Apostolic in disaffiliating from United and Apostolic’s alleged action of terminating the church memberships of the individual plaintiffs and terminating some of them as members from the Board of Directors? (2) does plaintiffs’ petition contain allegations of a property dispute between the religious litigants that falls within the exception to the rule that courts are prohibited from resolving religious controversies? (3) was the trial court prohibited from inquiring into defendants’ selection of a pastor, members of the Board of Directors, and other church officers, and could the court order an election for a selection of a new slate of church officials?
ACTIONS OF APOSTOLIC IN DISAFFILIATING FROM UNITED AND ALLEGEDLY TERMINATING PLAINTIFFS FROM MEMBERSHIP IN THE CHURCH AND SOME OF THEM FROM MEMBERSHIP ON THE BOARD OF DIRECTORS
Plaintiffs contend that the trial court could have inquired into the issue of disaffiliation and the issues of defendants’ actions in terminating plaintiffs’ church membership and membership of some of thém on the Board of Directors without engaging in doctrinal or ecclesiastical deliberations, and under these circumstances judicial inquiry into these issues would not be prohibited by the First Amendment to the U.S. Constitution. Plaintiffs’ view of the constitutional prohibition is incorrect.
In order to have religious freedom it is essential that all phases of activity necessary and essential to religious worship be free from governmental control. The right to determine religious doctrine and the manner of worship and freedom to engage in religious activities are no doubt the foundation of the First Amendment; but in order for these practices to be effectively assured all related church governing and administrative activities must also be protected from governmental interference.
In the decision of Kedroff v. St. Nicholas Cathedral of Russian O. Ch., 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952), the court in evaluating an earlier opinion of the supreme court stated with approval:
“The opinion radiates, however, a spirit of freedom for religious organizations, an independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.” Id., 73 S.Ct. at 154.
In Serbian, supra, the court cited Kedroff with approval and there stated:
“Religious freedom encompasses the ‘power [of religious bodies] to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine ...” Id., 96 S.Ct. at 2375.
United alleges that defendants incorrectly applied or failed to apply the rules of United and of Apostolic regulating the manner in which Apostolic could properly disaffiliate itself from United and seeks *1297 action by the court to invalidate the action of Apostolic in disaffiliating from United. The action that plaintiffs seek the court to take in this regard would be an interference in church government and is exactly what the constitution prohibits. The court is prohibited from reviewing the actions of Apostolic to determine whether or not it correctly applied the rules of Apostolic and the rules of United contained in its constitution in taking its actions to disaffiliate.
We observe from United’s pleadings that it is a Congregational church and those local churches which affiliate with it retain their local autonomy. United’s pleadings reflect that affiliation with it is totally voluntary and that the local church primarily retains full local autonomy. The language from the petition is as follows:
“3A — The United Pentecostal Church International Incorporated owns no property other than its general offices in Hazel-wood, Missouri but property is often held in trust for it by local congregations; it owns no property used by local assemblies in its own name, with the exception of Home Missionary Churches; affiliation with the central church is not mandatory but must be elected by each local assembly which still retains the power to transact local business, acquire and hold title to its property and select its local pastor; the central church only recommends a form of local church government but does not have a mandatory form; the central church is actually a ministerial alliance of individuals with which local assemblies affiliate for identification, fellowship, cooperation and protection; the central church has no hierarchical judicial system for the resolution of problems in the local assembly; it only maintains a judicial procedure for investigation, review and disposition of grievances, complaints and charges filed against the ministers comprising its membership; its voting constituency at the general conferences is comprised only of those who are in the ministry and members of local affiliated church congregations; and the rules and worship practices of a local church are largely dictated by the local assembly within the general framework established by the constitution of the United Pentecostal Church International.” (Tr. p. 78).
A review of the totality of this allegation establishes that we are not here involved with a hierarchical form of church government similar to the factual circumstances found in Serbian, supra.
A review of the relationship which Apostolic is alleged to have with United as set forth in the paragraph above makes it abundantly clear that United has no judicial system for the resolution of problems of the local assembly and that Apostolic is not denied the right to interpret, construe and apply the rules regulating its relationship with United.
The plaintiffs contend that the court should invalidate the action of disaffiliation because it was based upon incorrect application of the rules of procedure and substance applicable to disaffiliation. In Serbian, supra, the Illinois Supreme Court set aside a church determination defrocking a bishrp and the reorganizing of a diocese on the grounds that the church had not followed its own laws in the defrocking of the bishop and reorganization of the diocese. The U.S. Supreme Court reversed holding the Illinois court did not have the power to determine that the action taken was not resolved in accordance with the court’s determination of what the church law was. The court there said:
“The fallacy fatal to the judgment of the Illinois Supreme Court is that it rests upon an impermissible rejection of the decisions of the highest ecclesiastical tribunals of this hierarchical church upon the issues in dispute, and impermissibly substitutes its own inquiry into church polity and resolutions based thereon of those disputes. Consistently with the First and Fourteenth Amendments ‘civil courts do not inquire whether the relevant [hierarchical] church governing body has power under religious law [to decide such disputes] ...’” Id., 96 S.Ct. at 2380.
*1298 “For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense ‘arbitrary’ must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else in the substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; ...” Id., 96 S.Ct. at 2382.
The trial court here followed the mandates of Serbian, supra, in holding that it had no jurisdiction to inquire as to the correctness of the actions of Apostolic in disaffiliating from United.
Plaintiffs’ efforts to have a judicial declaration avoiding the action of Apostolic in terminating the membership in the church of individual plaintiffs and terminating some of their memberships on the Board of Directors without notice and otherwise without following the laws of the church is also a relief prohibited by Serbian, supra, and the trial court correctly determined that it did not have jurisdiction to consider the controversy.
Serbian, supra, teaches that courts may not inquire into what the church rules are, nor may they determine whether or not they have been correctly applied, for such actions by courts are prohibited by the First Amendment to the U.S. Constitution. The termination or selection of a pastor, members, and the members of the Board of Directors by Apostolic clearly involves an application of the church’s rules and regulations, and the trial court would have violated the constitutional requirement of religious freedom if it in any way inquired into whether the proper church rules had been followed in the termination and selection of members and church officials. See Simpson v. Wells Lamont Corporation, 494 F.2d 490 (5th Cir. 1974).
DOES THE PROPERTY EXCEPTION TO THE PROHIBITION OF INTERFERENCE BY COURTS IN CHURCH BUSINESS APPLY HERE?
Plaintiff United does not claim title to Apostolic property nor do any of the individual plaintiffs. There is no contention that Apostolic holds its property in trust for United. Not only are there no affirmative allegations in plaintiffs’ petition that they claim any property right, in defendants’ property which would justify their interference with any action the defendants may seek to take with regard to the sale or mortgage of the property, but rather affirmative allegations of plaintiffs’ petition establish that local churches who affiliate with United may retain control of their property.
The only interpretation of the pleading which could be remotely construed to justify a contention that plaintiffs are entitled to assert a right to exercise any control of defendants’ property would relate to the contention that some of the plaintiffs were improperly removed from office as members of the Board of Directors and that as Board Members they would have been entitled to participate in control of church property. A similar situation was clearly held by Serbian, supra, not to be included within the property exception to the constitutional prohibition, the court there finding that purely ecclesiastical rules are applicable to the termination of the right to hold a church office and where the control of the property is vested in the holder of the office, disputes concerning the control of the property as related to the office holder could not be resolved in the civil court. Property disputes in these circumstances are ecclesiastical in nature because they are totally involved in the power of the office. Serbian, supra, in discussing this issue made the following statement:
“Resolution of the religious disputes at issue here affects the control of church property in addition to the structure and administration of the American-Canadian Diocese. This is because the Diocesan Bishop controls respondent Monastery of St. Sava and is the principal officer of respondent property-holding corporations. Resolution of the religious dispute over Dionisije’s defrockment therefore determines control of the property. Thus, this *1299 case essentially involves not a church property dispute, but a religious dispute the resolution of which under our cases is for ecclesiastical and not civil tribunals” Id., 96 S.Ct. at 2380.
Because we have concluded that all the areas placed in controversy by plaintiffs’ petition involve circumstances where court action would be prohibited by the First Amendment, no useful purpose would be served by taking evidence and having a lengthy trial on the factual allegations contained in plaintiffs’ petition. The trial court made no error in sustaining the defendants’ exception of lack of jurisdiction over the subject matter.
AFFIRMED at appellants’ cost.

. Subsequent to the Fourteenth Amendment federal jurisprudence has construed the First Amendment as applicable to state action.