STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 21-175


OPELOUSAS GENERAL HOSPITAL AUTHORITY, A PUBLIC TRUST,

D/B/A OPELOUSAS GENERAL HEALTH SYSTEM

VERSUS

LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY,

D/B/A BLUE CROSS BLUE SHIELD OF LOUISIANA


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 16-C-3647-C
HONORABLE LEDRICKA THIERRY, DISTRICT JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of D. Kent Savoie, Sharon Darville Wilson, and Charles G.
Fitzgerald, Judges.


REVERSED.

**Michael William Magner**
**Jones, Walker**
**201 St. Charles Ave., 51st Fl.**
**New Orleans, LA 70170**
**(504) 582-8266**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Louisiana Health Service & Indemnity Company**

**Richard Allen Sherburne, Jr.**
**Attorney At Law**
**P.O. Box 98029**
**Baton Rouge, LA 70898**
**(225) 295-2116**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Louisiana Health Service & Indemnity Company**

**Joseph C. Giglio, Jr.**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505-2008**
**(337) 232-7424**
**COUNSEL FOR INTERVENOR APPELLANT:**
    **Blue Cross Blue Shield Association**

**Patrick Craig Morrow, Sr.**
**Morrow, Morrow, Ryan & Bassett**
**324 W Landry Street**
**Opelousas, LA 70570**
**(337) 948-4483**
**COUNSEL FOR PLAINTIFF APPELLEE:**
    **Opelousas General Hospital Authority, A Public Trust**

**Stephen Barnett Murray**
**Murray Law Firm**
**701 Poydras St., Ste. 4250**
**New Orleans, LA 70139**
**(504) 525-8100**
**COUNSEL FOR PLAINTIFF APPELLEE:**
    **Opelousas General Hospital Authority, A Public Trust**

**Michael H. Rubin**
**McGlinchey, Stafford**
**301 Main Street, 14th Fl**
**Baton Rouge, LA 70801**
**(225) 383-9000**
**COUNSEL FOR OTHER APPELLANT:**
    **Louisiana Department of Insurance**

**James Alcee Brown**
**Liskow & Lewis**
**701 Poydras, Ste 5000**
**New Orleans, LA 70139-5099**
**(504) 581-7979**
**COUNSEL FOR INTERVENOR APPELLANT:**
    **Blue Cross Blue Shield Association**

**James Huey Gibson**
**Gibson Law Partners**
**P. O. Box 52124**
**Lafayette, LA 70505**
**(337) 761-6023**
**COUNSEL FOR :**
    **Anthem, Inc., Et Al.**

**Thomas Allen Filo**
**Cox, Cox, & Filo**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF APPELLEE:**
    **Opelousas General HospitalAuthority, A Public Trust**

**Ronnie L. Johnson**
**McGlinchey Stafford**
**301 Main St., Ste. 1400**
**Baton Rouge, LA 70801**
**(225) 383-9000**
**COUNSEL FOR OTHER APPELLANT:**
    **Louisiana Department of Insurance**

**Mark Aaron Cunningham**
**Jones, Walker, Waechter, Poite**
**201 St. Charles Ave, 51st Flr**
**New Orleans, LA 70170-5100**
**(504) 582-8266**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Louisiana Health Service & Indemnity Company**

**Pride Justin Doran**
**Doran & Cawthorne, P.L.L.C**
**P. O. Box 2119**
**Opelousas, LA 70571**
**(337) 948-8008**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Louisiana Health Service & Indemnity Company**

**Douglas Michael Chapoton**
**Attorney At Law**
**P. O. Box 98029**
**Baton Rouge, LA 70898**
**(225) 295-2116**
**COUNSEL FOR DEFENDANT APPELLANT:**
　　**Louisiana Health Service & Indemnity Company**

**Juston M. O'Brien**
**McGlinchey, Stafford**
**301 Main Street, 14th Floor**
**Baton Rouge, LA 70801**
**(225) 383-9000**
**COUNSEL FOR OTHER APPELLANT:**
　　**Louisiana Department of Insurance**

**James David Caldwell, Jr.**
**Dept. of Insurance Legal Serv.**
**P. O. Box 94214**
**Baton Rouge, LA 70804-9214**
**(225) 342-5272**
**COUNSEL FOR OTHER APPELLANT:**
　　**Louisiana Department of Insurance**

**Arthur M. Murray**
**Murray Law Firm**
**701 Poydras St., Ste. 4250**
**New Orleans, LA 70139**
**(504) 525-8100**
**COUNSEL FOR PLAINTIFF APPELLEE:**
　　**Opelousas General HospitalAuthority, A Public Trust**

**Michael C. Drew**
**Jones, Walker**
**201 St. Charles Ave., 51st Fl**
**New Orleans, LA 70170**
**(504) 582-8318**
**COUNSEL FOR DEFENDANT APPELLANT:**
　　**Louisiana Health Service & Indemnity Company**

**Alan W. Stewart**
**Gibson Law Partners**
**2448 Johnston Street**
**Lafayette, LA 70505**
**(337) 761-6023**
**COUNSEL FOR :**
　　**Anthem, Inc., Et Al.**

**Graham H. Ryan**
**Jones, Walker, LLP**
**201 St. Charles Ave., 51st Fl.**
**New Orleans, LA 70170**
**(504) 582-8266**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Louisiana Health Service &Indemnity Company**

**Jessica W. Chapman**
**Attorney At Law**
**P. O. Box 98029**
**Baton Rouge, LA 70898**
**(225) 295-2116**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Louisiana Health Service &Indemnity Company**

**Raven C. Boxie**
**Doran & Cawthorne, P.L.L.C.**
**P. O. Box 2119**
**Opelousas, LA 70571**
**(337) 948-8008**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Louisiana Health Service & Indemnity Company**

**William E. Kellner**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505-2008**
**(337) 232-7424**
**COUNSEL FOR INTERVENOR APPELLANT:**
    **Blue Cross Blue Shield Association**

**Monica M. Vela-Vick**
**Phelps Dunbar**
**400 Convention St., Ste. 1100**
**Baton Rouge, LA 70802**
**(225) 346-0285**
**COUNSEL FOR APPELLEE:**
    **Blue Cross Blue Shield of South Carolina**

**Hayley Franklin**
**McGlinchey Stafford**
**301 Main St., Ste. 1400**
**Baton Rouge, LA 70801**
**(225) 383-9000**
**COUNSEL FOR OTHER APPELLANT:**
    **Louisiana Department of Insurance**

**Zachary Holmstead**
**Kirkland & Ellis, LLP**
**300 North LaSalle**
**Chicago, IL 60654**
**(312) 862-2392**
**COUNSEL FOR INTERVENOR APPELLANT:**
**Blue Cross Blue Shield Association**

**Ryan M. Kantor**
**Morgan, Lewis & Bockius**
**1111 Pennsylvania Ave., NW**
**Washington, DC 20004-2541**
**(202) 739-5343**
**COUNSEL FOR DEFENDANT APPELLANT:**
**Louisiana Health Service & Indemnity Company**

**WILSON, Judge.**

In this anti-trust class action, Defendant, Louisiana Health Service & Indemnity Company d/b/a Blue Cross And Blue Shield of Louisiana (BCBSLA), along with the Louisiana Commissioner of Insurance, Louisiana Department of Insurance, and the Blue Cross Blue Shield Association (the Association) appeal the trial court's grant of partial summary judgment in favor of Plaintiff Class. The trial court found that BCBSLA's "Blue Card" provision operates in restraint of trade in violation of La.R.S. 51:122. Additionally, on appeal, BCBSLA and the Association raised a peremptory exception for non-joinder. For the following reasons, we reverse the trial court's grant of partial summary judgment and deny the exception for non-joinder.

I.

### ISSUES

We must decide:

(1) whether the trial court erred in granting Plaintiffs' partial motion for summary judgment finding that the Blue Card provision operates in restraint of trade in violation of La.R.S. 51:122; and

(2) whether the Association and all other participants in the Blue Card Program are parties needed for just adjudication under La.Code Civ.P. art. 641.

II.

### FACTS AND PROCEDURAL HISTORY

Plaintiff, Opelousas General Hospital Authority, a Public Trust d/b/a Opelousas General Health System (Plaintiffs or Plaintiff Class) filed a class action on August 24, 2016, against BCBSLA, alleging BCBSLA conspired with the

Association and thirty-five other Blue Cross Plans to engage in anticompetitive conduct in violation of La.R.S. 51:122. At this time, several anti-trust class actions were brought against various Blue Cross Blue Shield entities which were consolidated in a federal Multi-District Litigation in the United States District Court for the Northern District of Alabama. Prior to certification of the class, attempts were made by BCBSLA to remove this case to federal court, but it was ultimately remanded back to Louisiana from the United States Eleventh Circuit Court of Appeal which cited a lack of diversity.

BCBSLA participates in the Blue Card Program. Under that Program, BCBSLA and Blue Plans from other states sign licensing agreements with the Association for the exclusive use of the Blue Cross and Blue Shield trademarks when contracting insurance in their respective states. Each insurer participates in the Blue Card Program whereby patients from out of state Blue Plans can receive the same discounted in-network rates from providers that were negotiated with that state's Blue insurer. Each Blue insurer may only use the Blue trademarks within their respective states.

The Plaintiff Class here represents Louisiana health providers who entered into contracts, known as provider agreements, with BCBSLA. Those agreements defined the term "member" to include insureds from out of state affiliate Blue Plans, and required the contractual discounts negotiated by BCBSLA for its insureds also apply to any patient with an out of state Blue Plan receiving care from the Louisiana contractual providers. This suit was tailored to include only provider agreements with BCBSLA and asserts only monetary claims under Louisiana Law. The Association filed a petition for intervention which was denied by the trial court and affirmed by this court. *Opelousas Gen. Hosp. Auth. v. La.*

2

*Health Serv. & Indem. Co.*, 19-265 (La.App. 3 Cir. 11/12/19), 284 So.3d 643, *writ denied*, 19-01912 (La. 1/28/20), 291 So.3d 1060.

On October 7, 2020, Plaintiffs moved for partial summary judgment seeking the return of contractual discounts for patients insured by out of state Blue insurers. In response, BCBSLA filed a motion to strike. Both motions were set for hearing on December 16, 2020, before Judge Alonzo Harris. At the hearing, the trial court denied the motion to strike and took the motion for partial summary judgment under advisement. On December 29, 2020, the trial court issued written reasons for judgment finding that BCBSLA's "Blue Card" provision operates in restraint of trade in violation of La.R.S. 51:122. In so finding, the trial court granted the motion for partial summary judgment. Judge Harris retired December 31, 2020. Plaintiffs circulated a proposed judgment on January 7, 2021, and BCBSLA objected. The trial court held a hearing on January 25, 2021, and stated that the successor Judge, Ledricka Thierry, would sign the judgment. The judgment was signed January 25, 2021, granting the partial motion for summary judgment and awarding Plaintiffs $416,830,039.60 together with costs and legal interest. BCBSLA timely filed this suspensive appeal. The Association, the Louisiana Commissioner of Insurance, and the Louisiana Department of Insurance also appealed in this matter. The Association filed peremptory exceptions of non-joinder of a party and BCBSLA joined in support.

III.

**STANDARD OF REVIEW**

Appellate courts review summary judgments de novo, applying the same criteria that govern the trial court's determination of whether summary

3

judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). A motion for summary judgment shall only be granted when there are no genuine issues of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966.

IV.

## LAW AND DISCUSSION

### Exception for non-joinder

We will first address the exception for non-joinder before delving into the heart of this appeal. BCBSLA and the Association filed peremptory exceptions of non-joinder alleging that the Association, along with the licensees of the Association, were parties needed for just adjudication. After reviewing the record, we disagree.

The objection of non-joinder of a party under La.Code Civ.P. arts. 641 and 642 may be raised through the peremptory exception. La.Code Civ.P. art. 927. "The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record." La.Code Civ.P. art. 2163. Louisiana Code of Civil Procedure Article 641 provides:

> A person shall be joined as a party in the action when either:
> (1) In his absence complete relief cannot be accorded among those already parties.
> (2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
> (a) As a practical matter, impair or impede his ability to protect that interest.
> (b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

4

"A person should be deemed needed for just adjudication only when absolutely necessary to protect substantial rights." *Indus. Cos., Inc. v. Durbin*, 02-0665, p. 14 (La. 1/28/03), 837 So.2d 1207, 1217. BCBSLA and the Association contend that the Association, along with all participants in the Blue Card Program, must be joined to this lawsuit because the judgment below directly impacts their rights and interests in coverage. The Association has consistently tried to participate in this case, and they have consistently been denied by the courts. In the trial court, the Association filed a petition to intervene in the matter asserting the same arguments put forth in the instant exception. Those arguments were rejected by the trial court and the intervention was denied. The denial was then affirmed by this court. *Opelousas Gen. Hosp. Auth.*, 284 So.3d. 643.

The record does not contain any evidence that supports finding the Association and the out of state Blue Plans are parties needed for just adjudication. Plaintiffs are only seeking review of the provider agreements with BCBSLA and money damages under those agreements. They are not attacking the entire Blue Card Program or any of the Association's rules. Thus, there is no reason that complete relief could not be afforded in the absence of these additional parties. Similarly, while the parties may have an interest in the subject matter, given the limited scope of the claim in this case, it cannot be said that they are so situated that adjudication in their absence may impair or impede their ability to protect their interest or subject any of the parties to a substantial risk of incurring multiple and inconsistent obligations.

In support of the peremptory exception for non-joinder, the Association cites to several cases where they purport that compulsory joinder had been ordered on significantly less important interests of a non-party than their

interests in the present case. However, after reviewing each of those cases, they are all easily distinguishable. *See Richmond v. Bd. of Comm'rs of Orleans Levee Dist.*, 08-774 (La.App. 4 Cir. 11/26/08), 2 So.3d 485; *Shamieh v. Liquid Transp. Corp.*, 07-1282 (La.App. 3 Cir. 1/30/08), 975 So.2d 161; *Milton v. Pilgrim Life Ins. Co. of Am.*, 500 So.2d 434 (La. Ct. App.1986); *Gulf Fed. Sav. & Loan Ass'n of Jefferson Par.* v. Sehrt, 233 So.2d 268 (La. Ct. App.1970); *Thomas v. Craig*, 424 So.2d 1090 (La. Ct. App.1982); *Wellman v. Tufail*, 04-656 (La.App. 5 Cir. 12/28/04), 891 So.2d 106. The non-parties in those cases all had direct interests in the subjects of the cases, such as security rights in the property subject to litigation, or were subject to the contracts at issue in the case. That is not so here. We find no evidence in the record that supports the contention that the parties seeking to be joined were parties needed for just adjudication. Accordingly, the peremptory exception of non-joinder is denied.

**Partial Motion for Summary Judgment**

Although Appellants assert various assignments of error, the heart of this appeal is whether the trial court erred in granting the motion for partial summary judgment in favor of Plaintiffs. Because we find it dispositive, we will first address BCBSLA's second assignment of error concerning the appropriate standard of analysis for a La.R.S. 51:122 claim. Louisiana Revised Statutes 51:122(A) provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal." This statute is virtually identical to section 1 of the Sherman Anti-trust Act, 15 U.S.C § 1, thus federal analysis of the Sherman Act is persuasive. Although both "[t]he federal and state antitrust laws were intended to be sweeping in breadth, encompassing every conspiracy, contract or combination that restrains trade, [n]ot

6

every business arrangement that restrains trade in some manner is illegal." *Plaquemine Marine, Inc. v. Mercury Marine*, 03-1036, p. 9 (La.App. 1 Cir. 7/25/03), 859 So.2d 110, 118 (internal citations omitted). To state a claim under La.R.S. 51:122, the restraint of trade must be unreasonable. *Id.*

The United States Supreme Court explained the standards for finding a restraint unreasonable in the seminal case, *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 885-86, 127 S.Ct. 2705 (2007), which states:

> The rule of reason is the accepted standard for testing whether a practice restrains trade in violation of § 1. See *Texaco, supra*, at 5, 126 S.Ct. 1276. "Under this rule, the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). Appropriate factors to take into account include "specific information about the relevant business" and "the restraint's history, nature, and effect." *Khan, supra*, at 10, 118 S.Ct. 275. Whether the businesses involved have market power is a further, significant consideration. See, e.g., *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (equating the rule of reason with "an inquiry into market power and market structure designed to assess [a restraint's] actual effect").

The rule of reason is not the only standard, as some restraints are deemed unlawful per se. "The *per se* rule, treating categories of restraints as necessarily illegal, eliminates the need to study the reasonableness of an individual restraint in light of the real market forces at work." *Id.* at 886. Thus, the per se rule is "confined to restraints . . . that would always or almost always tend to restrict competition and decrease output." *Id.* "To justify a *per se* prohibition a restraint must have manifestly anticompetitive effects and lack . . . any redeeming virtue." *Id.* (internal citations and internal quotation marks omitted).

7

> As a consequence, the *per se* rule is appropriate only after courts have had considerable experience with the type of restraint at issue, see *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 9, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979), and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason, see *Arizona v. Maricopa County Medical Soc.*, 457 U.S. 332, 344, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982).

*Id.* at 886-87.

> The first step in analyzing an agreement to restrain trade is to determine whether it should be categorized as horizontal or vertical. A horizontal conspiracy is an agreement between competitors that restrains trade at the same level of distribution, and such agreements are generally considered "per se" violations of anti-trust law. *Plaquemine Marine, Inc.*, 859 So.2d at 117*; Southern Tool & Supply, Inc.*, 862 So.2d at 280. A vertical restraint is imposed by persons at different levels of distribution, usually by one higher up in the distribution chain than the party restrained.

*Van Hoose v. Gravois*, 11-0976, p. 7 (La.App. 1 Cir. 7/7/11), 70 So.3d 1017, 1022.

Following the decision in *Leegin*, "[w]hen a vertical conspiracy is alleged, plaintiffs must show that the restraint of trade violates the 'rule of reason.'" *Id.* (citing Plaquemine Marine Inc., 859 So.2d at 118). *See Leegin*, 551 U.S. at 899. The case before us only questions the agreements between the medical providers and the insurer, BCBSLA. Nothing presented suggests that the providers and BCBSLA are competitors. Consequently, we find, and the parties agree, that the agreement in this case is properly classified as vertical in nature. This classification necessitates a rule of reason analysis. Although Plaintiffs argue that *Leegin* supports deeming a vertical agreement unlawful if it facilitates a horizontal cartel, *see Leegin*, 551 U.S. at 893, this case involves the provider agreements only and is not attacking the Blue Card Program as a whole. Therefore, we are

prohibited from considering whether the Blue Card Program constituted an illegal horizontal cartel and must limit our analysis to the vertical provider agreements.

On motion for summary judgment, the burden of proof remains with the movant. La.Code Civ.P. art. 966(D)(1). Thus, Plaintiffs must show through the motion, memorandum, and supporting documents that there is no genuine issue as to material fact and they are entitled to judgment as a matter of law. La.Code Civ.P. art. 966(A)(3).

> In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Id*. at 765–66.

*Larson v. XYZ Ins. Co.*, 16-0745 pp. 6-7 (La. 5/3/17), 226 So.3d 412, 416. We find that Plaintiffs have not carried their burden on summary judgment.

"The rule of reason analysis under both federal and Louisiana law requires proof of three elements: that the defendants (1) engaged in a conspiracy (2) that restrained trade or injured competition (3) in a particular market." *Van Hoose*, 70 So.3d at 1022. It is critical to note that "anti-trust laws are for the protection of competition," and all claims under the statute "must include an allegation of damage to competition." *Plaquemine Marine, Inc.,* 859 So.2d at 118. "This requirement cannot be met by broad allegations of harm to the 'market' as an abstract entity[,]" and "[a] mere conclusion unsupported by material facts does not set forth a cause of action; therefore, conclusory statements of fact or formulaic

9

recitations of the elements of an anti-trust violation are insufficient to state a claim." *HPC Biologicals, Inc. v. UnitedHealthcare of La., Inc.*, 16-0585, p. 13 (La.App. 1 Cir. 5/26/16), 194 So.3d 784, 795.

Plaintiffs assert that they have suffered injury by a lack of ability to contract with the out of state Blue Plans and by being forced to grant patients insured by the out of state plans the same contractual rates negotiated by BCBSLA. They evidence this injury through billing spread sheets showing what they would have charged these patients absent the provider agreements. Plaintiffs do not however, provide any evidence of injury to competition in general. In *Plaquemine Marine, Inc.*, the court found that plaintiffs failed to allege facts to indicate that anyone other than themselves was injured, which was insufficient to support a claim under La. R.S. 51:122. After reviewing the record, we find that Plaintiffs failed to prove damage to competition, an essential element to any anti-trust claim.

Plaintiffs were also required to prove a relevant economic market to meet their burden in this case. We find the evidence submitted by Plaintiffs was insufficient to meet that burden.

> In claims under both La. R.S. 51:122 and R.S. 51:123, a plaintiff is required to identify the particular market that is the subject of the anti-trust claim. See *Van Hoose*, 70 So.3d at 1022; *Plaquemine Marine, Inc.*, 859 So.2d at 119. . . . Under the rule of reason, as applied to Sherman Act cases, proof that a defendant's activities adversely affected competition in the appropriate product and geographic markets is essential to recovery. *Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc.*, 123 F.3d 301, 307 (5th Cir.1997). The relevant market has both geographic dimensions and product dimensions. *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 487 (5th Cir.1984). The relevant market includes a geographic market, which is the section of the country in which sellers of a particular product operate, as well as the product market, which encompasses the differences among various commodities

and the willingness of buyers to substitute one product for another. *Plaquemine Marine, Inc.*, 859 So.2d at 120. A proposed product market must include all commodities reasonably interchangeable by consumers for the same purposes. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395, 76 S.Ct. 994, 100 L.Ed.2d 1264 (1956). The market is established by examining the substitutes that a consumer might employ and the extent to which consumers will change their consumption of one product in response to a price change in another, i.e., the cross-elasticity of demand. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 469, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

*HPC Biologicals, Inc.*,194 So.3d at 793–94. Plaintiffs assert that the relevant market is the state of Louisiana which is undisputed. This satisfies the geographic dimensions of the relevant market.

However, where a plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that does not encompass all interchangeable substitute products, even when all factual inferences are granted in plaintiff's favor, the plaintiff fails to sufficiently plead the relevant market.

*Id.* at 794. The record in this case is devoid of any evidence that defines the relevant market under the appropriate standards. Additionally, the United States Supreme Court has equated the rule of reason with "an inquiry into market power and market structure designed to assess the combination's actual effect." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768, 104 S.Ct. 2731, 2740 (1984). Plaintiffs here failed to present any evidence of market power as part of their motion for partial summary judgment.

If Plaintiffs had included relevant evidence proving their market power and the injury to competition caused by the provider agreements in the relevant markets, summary judgment could potentially be granted in their favor. However, Plaintiffs failed to put forth the necessary evidence. As such, we find

11

that Plaintiffs failed to show they were entitled to judgment as a matter of law and that the trial court erred in granting the partial motion for summary judgment.

The Association, the Louisiana Commissioner of Insurance, and the Louisiana Department of Insurance asserted several other assignments of error on appeal. Given our decision to reverse the trial court's ruling granting the motion for partial summary judgment, a review of those assignments is unnecessary.

V.

## CONCLUSION

For the foregoing reasons, we find that the trial court erred in finding Plaintiffs met their burden on summary judgment.  Accordingly, this court reverses the ruling of the trial court granting the motion for partial summary judgment and awarding Plaintiffs damages in the amount of $416,830,039.60.  Additionally, this court denies the peremptory exception of non-joinder filed by the Association.

**REVERSED.**